**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1638

REPUBLIC BANK & TRUST COMPANY,

Petitioner - Appellant,

versus

JOHN R. KUCAN, JR.; WELSIE TORRENCE; TERRY
COATES,

Respondents - Appellees.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington.  Louise W. Flanagan,
Chief District Judge.  (CA-04-198)

Argued:  September 21, 2006          Decided:  August 21, 2007

Before NIEMEYER, TRAXLER, and SHEDD, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Brian David Darer, PARKER, POE, ADAMS & BERNSTEIN, L.L.P.,
Raleigh, North Carolina, for Appellant.  Richard Harris Frankel,
GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program,
Washington, D.C., for Appellees.  **ON BRIEF:** Catharine B. Arrowood,
PARKER, POE, ADAMS & BERNSTEIN, L.L.P., Raleigh, North Carolina,
for Appellant.  J. Jerome Hartzell, HARTZELL & WHITEMAN, L.L.P.,
Raleigh, North Carolina; Carlene McNulty, NORTH CAROLINA JUSTICE
CENTER, Raleigh, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Republic Bank & Trust Company brought this action seeking to compel arbitration of a state-court action filed by John Kucan, Jr., Welsie Torrence, and Terry Coates. The district court dismissed Republic Bank's action for lack of standing, and Republic Bank appeals. We vacate the district court's order and remand for further proceedings.

## I.

In 2003, Advance America, a national "payday" lender, contracted with Republic Bank to act as its servicing and marketing agent in North Carolina. The loan agreements documenting each transaction explained that Republic Bank was the actual lender, while Advance America acted only as Republic Bank's marketer and servicer. The loan agreements included an arbitration clause requiring any disputes among the borrowers, Republic Bank, and Advance America to be submitted to arbitration.

State-court plaintiffs Kucan, Torrence, and Coates (the "borrowers") have obtained one or more payday loans from Republic Bank through Advance America. The borrowers initiated in North Carolina state court a putative class action against Advance America only; Republic Bank was not named as a defendant. In the state-court action, the borrowers allege that the loan transactions violated North Carolina's usury laws and its Consumer Finance Act.

2

The borrowers seek, among other things, a declaration that the loan agreements are void and unenforceable, and disgorgement of all principal and interest illegally charged and collected.

Republic Bank did not move to intervene in the state-court action, but instead brought this action in federal court, seeking to compel the borrowers to submit their claims to arbitration as required by the loan agreements. The borrowers moved to dismiss the action, arguing that the district court lacked subject matter jurisdiction because neither diversity nor federal question jurisdiction existed and because Republic Bank lacked standing to compel arbitration of claims to which it was not a party. The district court concluded that Republic Bank lacked standing to maintain the action and dismissed it without considering whether subject matter jurisdiction existed. This appeal followed.

The standing issue resolved by the district court is one aspect of the subject matter jurisdiction inquiry. See, e.g., Pye v. United States, 269 F.3d 459, 466 (4th Cir. 2001) ("Standing is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States."). At oral argument, other questions arose about whether subject matter jurisdiction existed over Republic Bank's petition. The parties' briefs focused on standing and did not address in any detail the other aspects of subject matter jurisdiction. Republic Bank

3

nonetheless contended that it had demonstrated an adequate basis for diversity and federal question jurisdiction. Republic Bank's claim that federal question jurisdiction existed was premised on its view that the borrowers' usury claims were completely preempted by the Federal Deposit Insurance Act (the "FDIA"), see 12 U.S.C.A. § 1831d (West 2001), which governs usury claims asserted against state-chartered banks like Republic Bank. The preemptive reach of the FDIA was the central issue in Discover Bank v. Vaden, No. 06-1221, a case then pending before another panel of this court. After hearing oral argument, we held this appeal in abeyance pending issuance of the opinion in Vaden. The decision in Vaden has now been issued, see Discover Bank v. Vaden, 489 F.3d 594 (4th Cir. 2007), and the parties have submitted supplemental briefs addressing its effect.

II.

Republic Bank contends that the district court erred in dismissing its petition for lack of standing. We agree.

"The standing requirement is designed to guarantee that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate." Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 298 (4th Cir. 2005) Internal quotation marks omitted). Whether a plaintiff has standing is determined by considering the relevant facts as they existed at the

4

time the action was commenced. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [the plaintiff] had Article III standing at the outset of the litigation." (emphasis added)); Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1275 (11th Cir. 2003) ("Article III standing must be determined as of the time at which the plaintiff's complaint is filed.").

To satisfy the constitutional standing requirement, a plaintiff must demonstrate that: (1) "the plaintiff . . . suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there [is] a causal connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations, footnote, and internal quotation marks omitted).

We believe Republic Bank satisfies these requirements. Republic Bank, Advance America, and the borrowers were parties to contracts that required any claims or disputes to be resolved through arbitration. The borrowers, however, have refused to comply with this contractual obligation. Republic Bank, as a party to the contract, has the right to insist on compliance with that contractual term, and an order compelling the borrowers to

arbitrate their claims would ensure that the borrowers complied with the requirements of the contract.

Moreover, the claims asserted by the borrowers place assets belonging to Republic Bank at risk, notwithstanding the fact that the borrowers did not name Republic Bank as a defendant. The allegations of the pleadings, which we must accept as true at this juncture, see Pennell v. City of San Jose, 485 U.S. 1, 7 (1988), and the terms of the loan documents attached to the pleadings, establish that Republic Bank was the lender and that Advance America was its marketing and servicing agent. In their state-court complaint, the borrowers allege that the loans were made in violation of N.C. Gen. Stat. § 75-1.1 (2005), and that under N.C. Gen. Stat. § 53-166 (2005), they are entitled to a return of all principal, interest, or other fees or charges paid in connection with those loans. The borrowers seek a declaration that all loans made through Advance America were made in violation of North Carolina law, and an injunction barring the making or collection of payday loans. If the loans violate North Carolina law as alleged by the borrowers, then the loans themselves are void. See Ken-Mar Fin. v. Harvey, 368 S.E.2d 646, 648 (N.C. Ct. App. 1988) ("[T]he North Carolina Consumer Finance Act, G.S. 53-164 et seq., renders void any loan contract in which the licensed lender engages in unfair competition or deceptive trade practices."). Whether or not the borrowers specifically seek relief against Republic Bank, a

6

determination that the loan transactions are void would necessarily affect the interest of Republic Bank as lender.  For example, Advance America, as Republic Bank's agent, could seek to require Republic Bank to bear a portion of the loss caused by a disgorgement order.  Cf. Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 24 (1st Cir. 2000) (concluding that company against whom all claims had been dismissed did not have standing to compel arbitration because the company faced "no realistic risk" of liability as a co-obligor on contracts executed by companies remaining in the litigation).  A determination that the loans are void could likewise expose Republic Bank to claims from borrowers who are not part of the existing state court action.  Cf. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 336 (1980) (explaining that an appellant's "concern that their success in some unspecified future litigation would be impaired by [the] stare decisis or collateral-estoppel" effect of a lower court ruling "supplied the personal stake in the appeal required by Art. III").

Republic Bank thus has a sufficiently direct and personal stake in the litigation that is nominally between Advance America and the borrowers to satisfy the constitutional standing requirements.  Accordingly, we conclude that the district court erred by dismissing Republic Bank's petition for want of standing.[1]

_____

[1]The Federal Arbitration Act provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition

7

Given our conclusion that Republic Bank has standing to seek to compel arbitration, we must determine whether the other requirements of subject matter jurisdiction have been satisfied. See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004) (en banc) ("Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties. Accordingly, questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court." (citation omitted)).

While the Federal Arbitration Act permits a party to a contract containing an arbitration agreement to obtain an order compelling arbitration of the contract dispute, see 9 U.S.C.A. § 4 (West 1999), the Act does not create subject matter jurisdiction. A petition to compel arbitration may be filed in federal court only if subject matter jurisdiction (federal question, admiralty, or diversity) otherwise exists with regard to the underlying controversy. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983); Discover Bank v. Vaden, 396 F.3d 366, 373 (4th Cir. 2005) ("Vaden I"). Republic Bank contends that

---

for an order compelling arbitration. 9 U.S.C.A. § 4 (West 1999). The facts establishing Republic Bank's Article III standing also establish that Republic Bank is "aggrieved" within the meaning of the Act.

both diversity and federal question jurisdiction are present in this case and that we therefore have subject matter jurisdiction over its § 4 petition to compel arbitration.

We first consider Republic Bank's contention that federal question jurisdiction exists in this case. "Under . . . the well-pleaded complaint rule, . . . federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law; actions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question." In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 584 (4th Cir. 2006), cert. denied, 127 S. Ct. 1381 (2007). There are no federal claims asserted in the borrowers' state-court complaint, which suggests that federal question jurisdiction is not present.

There is an exception, however, to the well-pleaded complaint rule, in cases where the plaintiff's claims relate to an area in which federal law has completely preempted state law. See Childers v. Chesapeake & Potomac Tel. Co., 881 F.2d 1259, 1261 (4th Cir. 1989) ("The doctrine of complete preemption . . . serves as an exception to the well-pleaded complaint rule. If a federal cause of action completely preempts a state-law claim, any complaint that comes within the scope of the federal cause of action necessarily arises under federal law . . . ." (citation and internal quotation marks omitted)). Republic Bank contends that the borrowers' usury

claims are completely preempted by the FDIA, which governs usury claims asserted against state-chartered banks like Republic Bank. See 12 U.S.C.A. § 1831d.

This court's recent decision in Discover Bank v. Vaden, 489 F.3d 594 (4th Cir. 2007) ("Vaden II"), largely resolves this issue. In Vaden II, Discover Bank, a state-chartered bank, issued a credit card to Betty Vaden. Through its servicing affiliate Discover Financial Services ("DFS"), Discover Bank sued Vaden in state court over an unpaid credit-card balance. Vaden asserted various counterclaims against DFS (but not Discover Bank), alleging, among other things, that the interest rate on her credit card was usurious. Discover Bank then filed a § 4 petition in federal district court seeking to compel Vaden to submit her counterclaims to arbitration, in accordance with the terms of the credit-card agreement. Because the parties were not diverse, jurisdiction over the § 4 petition depended on the existence of a federal question. Discover Bank argued that there was a federal question because Vaden's state-law usury claim was completely preempted by the FDIA. Vaden argued, however, that her usury claim was asserted against DFS only. Because DFS is not a state-chartered bank, Vaden contended that her claims were not preempted by the FDIA. See id. at 597-98

On appeal, we held that the FDIA completely preempted state-law usury claims against state-chartered banks. See id. at 606.

10

We also concluded that the district court had properly determined (after remand by the court in <u>Vaden I</u>) that Discover Bank, the entity that had actually extended credit to Vaden, was the real party in interest with regard to Vaden's usury claims. <u>See</u> <u>id.</u> at 603. Because Discover Bank was a real party in interest, the fact that Vaden named only DFS in her counterclaim was irrelevant. We concluded that the district court had subject matter jurisdiction over Discover Bank's § 4 petition, and we affirmed the district court's order compelling arbitration. <u>See</u> <u>id.</u> at 608.

<u>Vaden II</u> thus establishes that usury claims against state-chartered banks are completely preempted by the FDIA, and that such claims that are nominally asserted against a non-bank are preempted if a state-chartered bank in fact is the real subject of the claims asserted by the plaintiffs. That determination, as it was in <u>Vaden II</u>, is a fact-specific one that we cannot make on the record before us. The ultimate decision as to whether federal question jurisdiction is present thus cannot be made without remanding this case to the district court for resolution of this factual question.[2] <u>See</u> <u>Vaden I</u>, 396 F.3d at 373.

---

[2]In addition to its § 4 claim seeking an order compelling arbitration, Republic Bank, under the Declaratory Judgment Act, seeks a declaration that the arbitration agreements are valid and enforceable and preclude litigation of <u>any</u> claims that the borrowers could assert against Republic Bank or its agents. <u>See</u> J.A. 23. Republic Bank contends that the borrowers could assert non-frivolous RICO or Truth-in-Lending claims against it, and that these potential, colorable federal claims alone are sufficient to establish federal question jurisdiction over its petition. <u>See</u>

11

If the requirements for the exercise of diversity jurisdiction were satisfied, of course, there would be no need to even consider the possibility of federal question jurisdiction. Unfortunately, the record before us is also insufficient to determine whether diversity jurisdiction exists.

Diversity jurisdiction exists when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C.A. § 1332(a) (West 2006). While the

---

Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370 (4th Cir. 2001) ("[I]f the declaratory judgment plaintiff is not alleging an affirmative claim arising under federal law against the declaratory judgment defendant, the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff."). We disagree.

A district court may grant declaratory relief only if there is an "actual controversy." 28 U.S.C.A. § 2201 (West 2006). Whether the subject of a declaratory judgment action is a sufficiently live controversy rather than an abstract question "is necessarily one of degree." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. The borrowers have executed documents releasing any claims they could assert against Republic Bank in connection with the payday loans and unconditionally waiving any right to assert RICO or Truth-in-Lending claims against Advance America. By virtue of these releases, there is no live controversy over potential RICO or Truth-in-Lending claims, and there is no jurisdiction over those portions of Republic Bank's declaratory judgment claims. See Household Bank v. JFS Group, 320 F.3d 1249, 1260 (11th Cir. 2003) (suggesting that the district court would lack jurisdiction over a declaratory-judgment action if the declaratory-judgment defendants executed "binding, judicially enforceable" releases of the federal claims).

12

citizenship requirements of § 1332 are satisfied in this case, we cannot determine whether the amount-in-controversy requirement is satisfied.

When determining whether the jurisdictional amount is satisfied in a case involving a petition to compel arbitration, it is appropriate to look through the petition to compel to the controversy underlying the arbitration request. See Delta Fin. Corp. v. Paul D. Comanduras & Assocs., 973 F.2d 301, 304 (4th Cir. 1992) ("In considering a suit to compel arbitration, the question of jurisdictional amount may be determined by reference to the possible award resulting from the requested arbitration."); see also Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998) ("In the context of a petition to compel arbitration, we have advised district courts to look through to the possible award resulting from the desired arbitration . . . ." (internal quotation marks omitted)); Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995) ("[T]he amount in controversy in a petition to compel arbitration . . . is determined by the underlying cause of action that would be arbitrated.").

Republic Bank contends that it could face damages in an amount over $75,000 if the state court certified the class action and found the loan agreements void. Republic Bank, however, did not intervene in the state court action and then remove it to federal court, or otherwise associate itself with the putative class

13

action. Instead, Republic Bank initiated an independent action in federal court naming only the three borrowers and seeking arbitration of only their claims. It is the possible award in that requested arbitration that is determinative of the amount-in-controversy question. See Delta Fin. Corp., 973 F.2d at 304. Because the payday loans obtained by the borrowers were small ($500 or less), the possible award from the arbitration requested by Republic Bank is significantly less than the required $75,000.

The borrowers in their state-court complaint seek an injunction against the enforcement or collection of loans that were made in violation of state law. Presumably a similar injunction would be available to the borrowers should they prevail in the arbitration sought by Republic Bank. Assuming that any injunction issued would constrain actions by Republic Bank, the cost to Republic Bank of complying with the injunction would be an appropriate consideration when determining whether the amount-in-controversy requirement has been met. See Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) ("In this circuit, it is settled that the test for determining the amount in controversy in a diversity proceeding is the pecuniary result to either party which a judgment would produce." (internal quotation marks and alteration omitted)); Rubel v. Pfizer Inc., 361 F.3d 1016, 1017 (7th Cir. 2004) (explaining that the "the cost to the defendant of complying with an injunction counts toward the jurisdictional minimum").

14

While we question whether the cost of complying with an injunction involving only three borrowers could amount to more than $75,000, there is no information in the record detailing the possible costs of compliance, and we cannot at this juncture say that it is a legal certainty that the jurisdictional amount is not satisfied. As the party invoking federal jurisdiction, Republic Bank bears the burden of establishing that the jurisdictional amount has been satisfied. See Lujan, 504 U.S. at 561. Because the record before us is inadequate to make that showing, we must remand to the district court to give Republic Bank the opportunity to establish that the amount in controversy in the arbitration that Republic Bank seeks exceeds $75,000.

IV.

We pause briefly to note that the borrowers have filed several motions seeking to dismiss the appeal on various grounds. Those motions are hereby denied. The borrowers' contention that the appeal should be dismissed under the Rooker-Feldman doctrine and this court's decision in Friedman's, Inc. v. Dunlap, 290 F.3d 191 (4th Cir. 2002), is foreclosed by the Supreme Court's decision in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), which clarified and narrowed the scope of the Rooker-Feldman doctrine. See id. at 284 ("The Rooker-Feldman doctrine . . . is confined to cases . . . brought by state-court losers complaining

15

of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

As to those motions that rely on events occurring after the district court proceeding and on evidence that was not before the district court, we note that we have already denied the borrowers' motion to supplement the appendix with this or similar material, and we decline to consider the material at this juncture. As previously noted, the question of standing is determined by the facts in existence at the time the action is commenced. The subsequent events pointed to by the borrowers thus would not affect our standing analysis, nor do they demonstrate that the action has become moot. To the extent that the borrowers believe that subsequent events may have rendered the action moot, they are free to present the materials previously submitted to us and any new information to the district court and to seek dismissal of the action by the district court.

V.

Although we conclude that Republic Bank has standing to bring its § 4 petition seeking to compel arbitration, we cannot on the record before us determine whether the requirements of federal question or diversity jurisdiction are satisfied in this case. Accordingly, we vacate the district court's order dismissing

Republic Bank's petition for lack of standing, and we remand so that the district court may conduct the appropriate inquiries to determine whether Republic Bank is a real party in interest with regard to the claims asserted by the borrowers and whether the amount in controversy with regard to the arbitration sought by Republic Bank exceeds $75,000.[3]

<u>VACATED AND REMANDED</u>

---

[3]On remand, the district court will be considering evidence submitted by the parties and resolving disputed factual issues. The conclusions we have reached today on the question of standing are based on the allegations in the pleadings, which we have accepted as true for purposes of our analysis. <u>See</u> <u>Pennell v. City of San Jose</u>, 485 U.S. 1, 7 (1988). Those conclusions will not bind the district court when it makes the required factual findings on remand.