# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2770

_____

Advance America Servicing of     *
Arkansas, Inc., d/b/a/ Advance America *
Cash Advance; Advance America Cash   *
Advance Centers of Arkansas, Inc.;    *
Advance America, Cash Advance       *
Centers, Inc.,                      *   Appeal from the United States
                                *   District Court for the Western
        Plaintiffs - Appellants,    *   District of Arkansas.
                                *
   v.                            *
                                *
Brenda McGinnis,            *
                                *
      Defendant - Appellee.     *

_____

Submitted: March 13, 2008
Filed: May 23, 2008

_____

Before MURPHY, BRIGHT, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Advance America Servicing of Arkansas, Inc. (Advance America) and associated entities[1] brought this action against Brenda McGinnis seeking to compel

_____

[1]Plaintiffs include other corporate entities - Advance America Servicing of Arkansas; Advance America Cash Advance; Advance America Cash Advance Centers of Arkansas, Inc.; Advance America, Cash Advance Centers, Inc.

arbitration of their dispute over a series of loan agreements. McGinnis moved to dismiss for lack of subject matter jurisdiction. The district court[2] granted the motion after determining that the amount in controversy was below the requisite minimum for diversity jurisdiction, and Advance America appeals. We affirm.

Underlying this lawsuit are six loan transactions which Advance America and McGinnis entered into between September 2006 and February 2007. Advance America offers cash loans in exchange for personal checks drawn on the customer's bank account. Under the terms of the loan Advance America agrees not to cash the customer's check for a specified period of time. At the end of that period, the customer must redeem the loan for the full amount of the check or may renew it by paying the interest due on the original loan and presenting a new check for the original loan amount with interest for the extended term. The loan agreement provides for arbitration for any dispute pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

McGinnis brought a putative class action in Arkansas state court on February 27, 2007, alleging that she had been charged more than 150% interest in violation of usury laws and that Advance America had engaged in deceptive, oppressive, and unconscionable conduct in violation of the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code. Ann. § 4-88-101, et seq. Her complaint sought invalidation of the contracts, twice the amount of interest paid by each member of the class, enforcement of a prior settlement agreement involving Advance America, and attorney fees and costs. Advance America filed an answer and motion to compel arbitration in the state court action; its motion had not been decided at the time of briefing in this case.

---

[2]The Hon. Robert T. Dawson, United States District Judge for the Western District of Arkansas.

Advance America brought this action against McGinnis in federal district court to compel arbitration and to stay the state court proceedings, initially asserting jurisdiction on the basis of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). McGinnis moved to dismiss, pointing out that Advance America had not removed the state action and that its federal complaint contained no class action allegations as required by CAFA. Advance America then amended its complaint to allege diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Such jurisdiction exists if there is complete diversity of citizenship and the amount in controversy is greater than $75,000. Capitol Indem. Corp. v. Russellville Steel Co., 367 F.3d 831, 835 (8th Cir. 2004). McGinnis moved to dismiss on the grounds that Advance America could not satisfy the $75,000 amount in controversy requirement for diversity cases.

The district court granted McGinnis' motion after concluding that Advance America had failed to establish that at least $75,000 is at issue in this action. No class has been certified to date, and the district court found that the state court damage claim is worth less than $1,000.[3] First acknowledging that it must view the value of the right sought to be enforced from Advance America's perspective, the district court went on to reject its argument that the costs of defending the state court class action and any potential judgment in favor of a class should be considered part of the amount in controversy here. The district court relied on New England Mortgage Sec. Co. v. Gay, 145 U.S. 123 (1892), in deciding that the amount in controversy should be determined by looking at what is involved in the case before the court rather than by trying to predict possible effects resulting from a judgment.

Advance America argues on appeal that the district court erred by focusing on the amount of McGinnis' possible recovery in the state action, rather than the

---

[3]Only one of the contracts between McGinnis and Advance America is in the record. The agreement provides that McGinnis was to receive $250 in cash in return for a $278.83 check and shows an annual percentage interest rate of 150.32%.

consequential damages it could suffer from an adverse judgment. To support its argument, Advance America submitted a declaration by its corporate counsel stating that its potential liability in the state court action includes compensatory damages, class action exposure, and business cessation in Arkansas, and that its potential liability could easily exceed $75,000.[4] It cites to the Supreme Court's decision in Hunt v. Washington State Apple Advert. Comm., which held that "[t]he value of [the right sought to be enforced] is measured from the losses that will follow from the [challenged state] statute's enforcement." 432 U.S. 333, 347 (1977).

McGinnis points out that Advance America could have attempted to remove her state court action to federal court under diversity jurisdiction but instead chose to bring an action under the Federal Arbitration Act seeking a declaratory judgment and injunctive relief to enforce the arbitration provision in their contract. She argues that the object of the litigation here is limited to the amount involved in the arbitration between the two parties. Asserting that the value of her damage claims was less than $1,000, McGinnis submits that the district court appropriately determined that Advance America failed to meet the jurisdictional threshold. She contends that the courts must look to the possible award resulting from the arbitration which Advance America seeks in this action in order to determine whether the requisite amount in controversy is satisfied. Advance America's other potential future damages and contingent costs are therefore not relevant she argues.

The Federal Arbitration Act does not create independent federal question jurisdiction. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 26

---

[4]Counsel's declaration rested on conclusory speculations about potential costs and damages arising from an adverse state court judgment. Since Advance America uses the same form contract with all of its customers in Arkansas, it asserts that invalidation of its agreement with McGinnis would affect its other contracts in the state, resulting in unspecified damages over $75,000. Counsel did not address the potential value of an adverse arbitration award.

n.32 (1983). Rather, § 4 of the Act "provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." Id. We review de novo the district court's ruling that it had no subject matter jurisdiction over Advance America's claim. See Minnesota Ass'n of Nurse Anesthetists v. Allina Health Syst. Corp., 276 F.3d 1032, 1040 (8th Cir. 2002). The party invoking federal jurisdiction has the burden to prove the requisite amount by a preponderance of the evidence. Rasmussen v. State Farm Mut. Auto. Ins. Co., 410 F.3d 1029, 1031 (8th Cir. 2005). A complaint will be dismissed for lack of subject matter jurisdiction if it appears to a legal certainty that the value of the claim is less than the required amount of $75,000. In re Minnesota Mut. Life Ins. Co. Sales Practices Litigation, 346 F.4d 830, 834 (8th Cir. 2003).

In our circuit the amount in controversy is determined by the value to the plaintiff of the right sought to be enforced. Massachusetts State Pharm. Ass'n v. Fed. Prescription Serv., Inc., 431 F.2d 130, 132 (8th Cir. 1970). In the case just cited, the plaintiff was a group of pharmacies seeking to bring a class action to enjoin the defendant from filling prescriptions at discount prices. We pointed out that to value the jurisdictional amount from the point of view projected by the defendant would effectively permit plaintiffs to aggregate their individual claims without having to fulfill the normal class action aggregation requirements. See id. at 132 n.1. Under the plaintiff's viewpoint rule, value is measured by focusing on the object of the particular litigation brought by the plaintiff. See Hunt, 432 U.S. at 347.

Although Advance America may suffer substantial costs as a result of an adverse class action judgment, possibly exceeding $75,000 in damages, the object of the action before the court is to compel arbitration of the dispute between McGinnis and Advance America concerning their loan transactions which have a small monetary value. Advance America's amended complaint in this action asserts that it has been injured by her refusal to honor the loan agreement and to submit her dispute to the

arbitration process. The object of this litigation is thus the value at stake in the arbitration dealing with the loan transactions between these two parties. Cf. We Care Hair Dev., Inc. v. Engen, 180 F.3d 838, 841 (7th Cir. 1999) ("[S]ince the present suit is not a removal suit but rather an independent federal suit, it is the stakes of the arbitration and not the possible state court award that control.").

While we adhere to the circuit rule that the value of the underlying controversy must be viewed from the perspective of the federal plaintiff, see Massachusetts State Pharm. Ass'n, 431 F.2d at 132, Advance America seeks to extend this principle to include costs of its potential exposure in the uncertified class action in state court and its increased costs in defending such a suit compared to the two party arbitration sought here. The cases cited by Advance America in support of its argument are inapposite or distinguishable. It relies on an unpublished opinion, Fitzgerald Railcar Serv. of Omaha, Inc. v. Chief Indus., Inc., 141 Fed. Appx. 491 (8th Cir. 2005), holding that the losses of a commercial tenant from breach of a lease, including likely termination of a profitable business and relocation, should be considered in the value of the litigation. Those losses were directly involved in that action since the tenant's contractual rights under the lease included an option to renew for many years for a specified amount, easily exceeding $75,000. See id. at 492-93. Also in contrast to the case before the court, no other lawsuit was implicated in their dispute.

Advance America cites another unpublished opinion, Republic Bank & Trust Co. v. Kucan, 245 Fed. Appx. 308, 314 (4th Cir. 2007), which stated that while it is the "possible award in the requested arbitration that is determinative of the amount-in-controversy question," courts may "look through the petition to compel to the controversy underlying the arbitration request." The plaintiff bank, a payday lender, argued that it would suffer potential damages exceeding $75,000 if a class action were certified in an underlying state case and its loan agreements became unenforceable. See id. The Fourth Circuit found it significant that the bank had not sought to intervene in or remove the putative state court class action, but rather had "initiated

an independent action in federal court naming only the three borrowers and seeking arbitration of only their claims." Id. The case had originally been dismissed in the district court for lack of standing so the record on jurisdictional amount had not been developed. Id. at 310. Despite the small loan amounts involved in the requested arbitration with three borrowers ($500 or less), the Fourth Circuit took note of the fact that they were seeking injunctive relief in the state action which could result in costs of compliance and thought it fair to remand to give the bank "the opportunity to establish that the amount in controversy in the arbitration . . . exceeds $75,000." Id. at 315. Here in contrast, the record shows that Advance America had an opportunity to submit evidence in the district court and did submit a declaration by its corporate counsel seeking to show that the amount in controversy in the arbitration of its contractual dispute with McGinnis exceeds $75,000. The district court found that Advance America had not met its burden of proof on the jurisdictional amount. We conclude that the district court did not err in finding counsel's conclusory declaration insufficient to establish that the amount of the possible award in the arbitration would exceed $75,000. See Republic Bank, 245 Fed. Appx. at 314 (possible award in arbitration determines amount in controversy question).

The Seventh Circuit has similarly refused to adopt the view that the value of the object of the federal litigation should be measured by the potential value of avoiding state court litigation, pointing out that courts must look to the pecuniary result which the plaintiff would receive from the arbitration it seeks to compel. See America's MoneyLine, Inc. v. Coleman, 360 F.3d 782, 786 (7th Cir. 2004). The Second Circuit's decision in Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157 (2d Cir. 1998), is also consistent with the principle that it is the possible arbitration award that determines the amount in controversy on the jurisdictional issue. The damages sought in a state action may nevertheless help inform "the possible award resulting from the desired arbitration." Id. at 160. In Hamilton, the value of the dispute exceeded the jurisdictional minimum amount because the underlying state court complaint between the parties alleged actual and punitive damages over $1 million. Id. at 161. See also

Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995) ("[T]he amount in controversy in a petition to compel arbitration . . . is determined by the underlying cause of action that would be arbitrated."); Webb v. Investacorp, Inc., 89 F.3d 252, 257 n.1 (5th Cir. 1996) (per curiam) (applying the plaintiff's point of view and holding that the amount in controversy is the difference "between winning and losing the underlying arbitration"); 13B Charles Alan Wright et al., Federal Practice & Procedure: Jurisdiction § 3569, at 172-73 (2d ed. 1984) ("amount is measured by the possible award that might reasonably result from an arbitration").

Even the Sixth Circuit's unpublished opinion in Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro, 129 Fed. Appx. 194 (6th Cir. 2005) (per curiam), fails to support Advance America's argument that the amount in controversy here is the value of avoiding the underlying state court litigation. In Woodmen, Scarbro sought damages of $20,000 under an insurance policy, plus attorney fees and compensatory and punitive damages. Id. at 196. Because of these possible damage claims against the insurer, the Sixth Circuit concluded that there was no legal certainty that the value of the arbitration would be below $75,000 in light of the insurer's potential liability in the underlying state court litigation. Id. In contrast, the value of the object of the litigation between Advance America and McGinnis has not been shown to exceed $75,000. While it may be true that an adverse finding could cast doubt on other Advance America contracts, future contingent losses not directly arising from its dispute with McGinnis should not be considered in evaluating the amount in controversy between these two parties. See Wabash Ry. Co. v. Vanlandingham, 53 F.2d 51, 52 (8th Cir. 1931).

Advance America also asserts that the potential costs of litigating McGinnis' claims in state court, as opposed to conducting a less costly arbitration, should be considered in analyzing the amount in controversy. To advance this argument, it relies on cases which found relevant to the amount in controversy the additional cost of conducting arbitration proceedings at an alternate location. In Richard C. Young

& Co., Ltd. v. Leventhal, 389 F.3d 1 (1st Cir. 2004), the First Circuit affirmed the district court's finding that the amount in controversy requirement had been met because of the expense of holding the arbitration in California instead of Boston. Similarly, in S.J. Groves & Sons Co. v. American Arbitration Ass'n, 452 F. Supp. 121 (D. Minn. 1978), the district court held that costs associated with the location of an arbitration come into play when determining the amount in controversy. These cases are not relevant to our inquiry because they address the question of where, rather than whether, to arbitrate. McGinnis rightly points out that if the difference in cost between arbitration and ordinary court litigation were considered, virtually every petition to compel arbitration would meet the amount in controversy requirement, regardless of the size of the individual dispute at issue.

Advance America submits that even if the amount at stake in the arbitration is considered the object of the litigation, that amount exceeds $75,000 in light of McGinnis' possible claims for attorney fees. We agree with McGinnis, however, that there is nothing in the record supporting Advance America's speculation that attorney fees awarded by the arbitrator could possibly exceed $75,000 when the value of the disputed loan transactions was found by the district court to be below $1,000. For the same reason, Advance America's argument that McGinnis could seek to recover damages for emotional distress through the arbitration is unfounded. Nothing in her state court complaint alleges such damages, prohibiting recovery under the Arkansas Deceptive Trade Practices Act. See FMC Corp. v. Helton, 360 Ark. 465, 202 S.W.3d 490, 502-03 (2005) (no mental anguish award absent allegation of physical injury or intentional infliction of mental distress under ADTPA). Since McGinnis has not alleged that she suffered physical injury or that Advance America sought intentionally to inflict mental distress on her, the argument that she might recover damages for emotional distress exceeding the $75,000 amount in controversy requirement is inconsistent with established Arkansas law.

For these reasons we affirm the judgment of the district court.

_____