# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1113

_____

| | | |
|---|---|---|
| James R. Usery, as Trustee of the Jim and Rhonda Usery Revocable Trust; Rhonda Usery, as Trustee of the Jim and Rhonda Usery Revocable Trust, | * * * * * | |
| Appellants, | * * | Appeal from the United States District Court for the Eastern |
| v. | * * | District of Arkansas. |
| Anadarko Petroleum Corporation; Hallwood Energy L.P., | * * * | |
| Appellees. | * | |

_____

Submitted: March 9, 2010
Filed: June 7, 2010

_____

Before BYE, ARNOLD, and COLLOTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After James and Rhonda Usery brought this suit in an Arkansas state court to quiet title to a mineral interest, the defendants, Anadarko Petroleum Corporation and Hallwood Energy, L.P., removed it to federal court, asserting that there was diversity jurisdiction over the case. *See* 28 U.S.C. §§ 1441(a), 1332(a). When the Userys moved to remand the action because the amount in controversy did not exceed $75,000, the district court denied the motion. The Userys appealed and we reverse the

order and remand the case to the district court with directions to remand it to the state court in which the Userys initiated it.

The parties are on common ground that the party seeking removal based on diversity of citizenship bears the burden of proving, by a preponderance of the evidence, that the matter in controversy "exceeds the sum or value of $75,000," 28 U.S.C. § 1332(a); *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009), but at this juncture they completely part company. The Userys maintain that since they are the masters of their cause of action they have effectively insulated their case from removal by averring in their complaint that the mineral interest at issue, the right to natural gas, was worth less than $75,000. It is true that if a plaintiff's complaint asks "for less than the jurisdictional amount, only the sum demanded is in controversy," and so a federal court has no jurisdiction over the action. 14AA Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3702, 48 (3d. ed. Supp. 2009); *see St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-92 (1938); *see also Zunamon v. Brown*, 418 F.2d 883 (8th Cir. 1969). But there is no sum demanded in this case and thus this principle is inapposite: The plaintiffs simply asked the state court to determine the ownership of a mineral interest; they did not ask for a money judgment for a sum certain or for consequential damages. This kind of case therefore engages the part of the relevant statute that provides for federal jurisdiction when the matter in controversy "exceeds the ... *value* of $75,000." 28 U.S.C. § 1332(a) (emphasis added).

We have held repeatedly that in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue. *See*, *e.g., Federated Mut. Implement & Hardware Ins. Co. v. Steinheider*, 268 F.2d 734, 737-38 (8th Cir. 1959); *Advance America Servicing of Ark., Inc. v. McGinnis*, 526 F.3d 1170, 1173-74 (8th Cir. 2008). We have sometimes referred to this principle as the "plaintiff's viewpoint rule," *see id.* at 1173, but this does not mean, as plaintiffs seem to think, that their view of what the asserted right is worth is controlling. The question

is not how a plaintiff subjectively values a right or even what his or her good-faith estimate of its objective value is: The question is the actual value of the object of the suit. In a quiet title action, therefore, in deciding the jurisdictional question, a district court must determine what the property interest at issue is worth in the marketplace, which is a matter of objective fact. And that is why on appellate review we ask whether a district court's determination of the value of the interest in issue was clearly erroneous. *See Trimble v. Asarco, Inc.*, 232 F.3d 946, 964-65 (8th Cir. 2000), *abrogated on other grounds*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549-52 (2005).

In denying the motion to remand, the district court adverted to decisions that look to the pecuniary risk that a case presents to a defendant as the measure of the amount in controversy in the case. We are aware that there are cases in other circuits that hold that when the costs to a defendant of losing a case exceed the benefit that a plaintiff would gain by winning it, the amount in controversy can sometimes be measured by the defendant's costs. *See McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 393-95 (7th Cir. 1979). We have never endorsed this rule, but it is not necessary to address the matter because there is no such asymmetry here: The matter in controversy in this case is the market value of the disputed mineral interest, and that by definition is necessarily the same to both parties.

With this simple and well-established principle in mind, we turn to the question of whether the district court correctly denied the Userys' motion to remand. In concluding that the requisite jurisdictional amount was in controversy and denying the motion, the district court relied on two affidavits that the defendants submitted. One was from a registered petroleum engineer who had worked in the oil and gas industry for more than thirty years and whose duties included estimating the projected value of gas reserves that Hallwood owns. The affiant avers that the right to natural gas in issue here would produce more than $400,000 of income over its productive lifetime.

This affidavit is not very satisfactory for a number of reasons, not least because it is entirely silent on the present value of the interest, the very question that is crucial.

So, taking this affidavit as true, as the district court did, is this interest worth more than $75,000? We simply don't have sufficient information to tell. For one thing, the affidavit contains no estimate of how long the mineral interest at issue might reasonably be expected to produce, whether its production would be relatively constant over its productive life, or what a reasonable discount rate might be in the circumstances, so that we could make some estimate of its present value. (Nor have we located any source that would allow us to take judicial notice of those matters.) The affidavit also did not indicate what value, if any, Hallwood gave the relevant asset on its books. Another very real difficulty is that the affiant offers no indication of whether the estimated income is gross or net. This is a significant omission: The value of the mineral interest on the market would decrease as exploration, development, and extraction costs increased. For all these reasons, it would be hazardous to conclude from this affidavit that there is diversity jurisdiction here.

The other affidavit on which the district court relied was from a reservoir engineer in Anadarko's employ who has worked for over thirty years in the oil and gas industries and has had extensive experience in evaluating oil and gas interests. His affidavit is similarly thin. He estimates that the income from a gas well drilled on the relevant property would be in the "high six-figure range, in consideration of royalty interests only," assuming that the putative well was as productive as a completed well that is three miles from it. Not only does this affidavit share all the infirmities of the other one, it also offers no hint as to the likelihood that the well on the property in issue would be as productive as the one three miles away.

That completed well, moreover, does not lie in the Fayetteville shale where the relevant mineral interest is located. It may be instructive that the affiant avers that if the presumed well is as productive as a completed well that is two miles away from

-4-

it and in the Fayetteville shale, its income would only be "in excess of $75,000 over the productive life of the well." This statement carries an inference, though not a necessary one, that wells in the shale are much less productive than ones located elsewhere. We think, too, that the assertion that income would exceed $75,000 cannot be taken to mean that it would be more than $75,000.01; and in the real world the capitalized value of that accumulation, given any realistic discount rate and time to aggregate, would necessarily not exceed $75,000. So if we take this part of the affidavit on its own terms, it would defeat jurisdiction if Anadarko's royalty interest alone were considered as the basis for it. We think it revealing that the affiant did not opine as to which of the two completed wells he adverted to provided the more relevant comparison. We are left with the impression that he did not know, which is fair enough. But without such an opinion, the affidavit cannot carry the day for the defendants.

A comparison of the proof offered here with the affidavit used to support the existence of diversity jurisdiction in *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767 (6th Cir. 2009), highlights the weakness of the evidence that the defendants offered in resisting the Userys' motion. In *Northup*, an expert expressly attested both to the value of the relevant mineral interest's discounted cash flow and to the costs of drilling and extraction. *Id.* at 769; *see also Ladnar v. Tauren Exploration, Inc.*, Civ. No. 08-1725, 2009 WL 196021, at *2 (N.D. La. Jan. 27, 2009). Neither of these important matters receives any attention in the affidavits that the defendants submitted to support the propriety of removal in this case.

As we have said, we review the district court's decision that the requisite jurisdictional amount was in controversy under a clearly erroneous standard, *see Trimble*, 232 F.3d at 964-65, and we observe, too, that we must resolve all doubts about federal jurisdiction in favor of remand to the state court, *see Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007). Because, after carefully considering the record, we are left with a definite and firm conviction that the

defendants failed to carry their burden by a preponderance of the evidence, *see American Boat Co., Inc. v. Unknown Sunken Barge*, 567 F.3d 348, 352 (8th Cir. 2009), we reverse the district court's order and remand the case with directions to remand it to the state court in which the Userys initiated it.

BYE, Circuit Judge, dissenting.

I dissent as I do not believe the district court committed clear error when it found the defendants had met their burden of showing the value of the mineral interest at stake in this case more likely than not exceeds $75,000. Once the Userys challenged the amount in controversy, the defendants, as the party seeking to invoke federal jurisdiction, were required to prove the amount in controversy by a preponderance of the evidence. Drobnak v. Anderson Corp., 561 F.3d 778, 786 (8th Cir. 2009). The preponderance of the evidence standard is the lowest standard of proof available in the law. United States v. Sparkman, 500 F.3d 678, 685 (8th Cir. 2007). As my colleagues have noted, we review the district court's factual determination regarding the amount in controversy for clear error. Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990). We may reverse only if we have a definite and firm conviction that the district court was mistaken. Am. Boat Co., Inc. v. Unknown Sunken Barge, 567 F.3d 348, 352 (8th Cir. 2009).

Federal courts take into account the value of the underlying minerals in calculating the amount in controversy for jurisdictional purposes when a mineral interest is at stake. See Northup Props., Inc. v. Chesapeake Appalachia, L.L.C., 567 F.3d 767, 770-71 (6th Cir. 2009) (citing Ladner v. Tauren Exploration, Inc., No. 08-1725, 2009 WL 196021, at *2-3, (W.D. La. Jan. 27, 2009)). Mineral interests are notoriously difficult to value, as the Supreme Court itself noted in ASARCO, Inc. v. Kadish, 490 U.S. 605, 628 n.3 (1989). The court in Northup Properties, valuing a mineral lease, relied on the affidavit of a petroleum engineer estimating "(1) the 'future cash flows' from the natural gas well at $168,147; (2) the discounted present value of

the well as between $106,874 and $131,426; (3) the value of the remaining undeveloped acreage of the entire leasehold estate at $476,700; and (4) the initial cost of drilling the well as exceeding $75,000." Northup Properties, 567 F.3d at 769. The Ladner court, in valuing the extinguishment of another lease, relied on two affidavits, one setting forth the value of the leasehold interest itself at between $123,906.25 and $743,437.50 and another which estimated the net present value of the natural gas that could be produced from the leased acreage at $216,420. The court found $175,841.25, or 13/16 of the projected production value was part of the amount in controversy because the landowner retained the right to 3/16 of the production under the lease.

The defendants in the instant case presented the affidavit of John Rathmann, Anadarko's Senior Staff Reservoir Engineer, a petroleum engineer with over thirty years of experience. Rathmann indicated his job responsibilities include valuing Anadarko's acreage holdings in the Fayetteville Shale (the location of the Usery property). He stated the pre-production consideration for Hallwood's mineral lease alone was $42,000. I note the amount in controversy here is the value of the entire mineral interest, of which Hallwood's leasehold interest is only a part. Rathmann also attested that Anadarko retained the right under the lease to 3/16 of the proceeds from the sale of gas produced on the property. Rathmann cited the existence of several producing wells in the immediate area, including one well outside the Fayetteville Shale located only three miles to the south. Using that well as a frame of reference, Rathmann estimated the total value of the royalties alone on gas extracted from the property would be "in the high six figure range" over the life of the well. Rathmann also estimated production on the Usery property based on a horizontal well two miles west of the property, and concluded the value of the royalty interest alone over the productive life of such a well would be in excess of $75,000. It was not necessary for Rathmann to choose a "likely" well, since both of his comparisons resulted in a value in excess of the jurisdictional minimum. I am similarly confused by the majority's statement that Rathmann's affidavit was somehow deficient because "the assertion that

-7-

income would exceed $75,000 cannot be taken to mean that it would be more than $75,000.01[.]" A value of $75,000.01, without more, exceeds $75,000, which is all that 28 U.S.C. § 1332(a) requires.

The record also contains the affidavit of William H. Marble, Vice President of Engineering and Land for Hallwood Energy, L.P., another engineer with more than thirty years of experience in oil and gas exploration and production. Marble estimates that Hallwood, as holder of the lease on the mineral interest, stands to lose more than $400,000 in future revenue should the lease be terminated.

In contrast, the Userys merely pleaded the value of the mineral interest is less than $75,000. They contend this was equivalent to a landowner testifying as to a value of his land, which is admissible evidence in the state of Arkansas. However, they submitted no affidavits or sworn testimony on the value of the mineral rights in their land. Although they state the pleading was drafted "after consulting with a licensed appraiser familiar with the value of mineral rights in the area," the Userys provide no testimony or evidence regarding such an appraiser or any appraisal which might have been made on their property.

The evidence before the district court at the time it determined the amount in controversy for the purpose of federal jurisdiction was a blank assertion from the Userys that the mineral interest attached to their land was worth less than $75,000, to be weighed against affidavits from petroleum engineers setting forth a direct lease compensation of $42,000, projected royalties of more than $75,000 to "high six figures" depending on the type of well, and projected revenues under the lease from the minerals themselves of $400,000. The mineral interest to be adjudicated in this case encompasses all of those values. While it is true no evidence was submitted as to the costs of production on a well, the lease compensation plus the projected royalties alone, neither of which would be affected by the costs of production, are more than enough to satisfy the jurisdictional requirement.

There may be a case where failure to discount for present value or failure to account for costs of production might be fatal to a finding that the amount in controversy exceeds the jurisdictional minimum. In the instant case, where there is unrebutted evidence that the outcome will determine the fate of half a million dollars worth of natural gas on the property, I cannot say the district court clearly erred in finding it more likely than not that the amount in controversy exceeded $75,000.

I therefore respectfully dissent.

_____