# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 09-2433

_____

Northport Health Services of Arkansas,
LLC, et al.,

      Plaintiffs - Appellants,

      v.

Wayne Rutherford,

      Defendant - Appellee.

_____

No. 09-2435

_____

Appeals from the United States
District Court for the
Western District of Arkansas.

Northport Health Services of Arkansas,
LLC, et al.,

      Plaintiffs - Appellants,

      v.

Tresa Robinson,

      Defendant - Appellee.

_____

Submitted: January 12, 2010
Filed: May 14, 2010

_____

Before LOKEN, Chief Judge,[*] JOHN R. GIBSON and WOLLMAN, Circuit Judges.
_____

LOKEN, Chief Judge.

These are separate actions to compel arbitration of state law tort claims asserted by Wayne Rutherford and Tresa Robinson, representatives of the estates of Isaac Rutherford and Donna Faye Snow. The claims arise out of incidents that occurred after Isaac Rutherford and Snow were admitted to nursing home facilities in Fayetteville and Springdale, Arkansas, operated by Northport Health Services of Arkansas, LLC, and two of its affiliates (collectively, "Northport"). Prior to being admitted to the nursing homes, Isaac Rutherford and Snow signed Admission Agreements providing that all disputes (broadly defined to include the pending tort claims) "shall be resolved by binding arbitration," and that the agreement to arbitrate "shall be governed by" the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the FAA).

The representatives filed actions asserting their tort claims in state court against Northport plus the administrators of the two nursing homes.[1] Northport (but not the administrators) filed these federal actions to compel arbitration under § 4 of the FAA, basing federal jurisdiction on diversity of citizenship between the Northport entities, alleged to be Alabama citizens, and the state court plaintiffs, alleged to be Arkansas citizens. The representatives did not contest the citizenship allegations, and the district court granted petitions to compel arbitration. The Supreme Court then held

_____

[*]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

[1]The first-filed Rutherford action initially named only the Northport entities. They removed the case to federal court, plaintiff filed an amended complaint adding the administrator as defendant, which destroyed diversity jurisdiction, and the case was remanded to state court. The later-filed Robinson action initially joined a non-diverse administrator and the Northport entities as co-defendants, precluding removal.

-2-

that a federal court entertaining a petition to compel arbitration based upon federal question jurisdiction "should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy." Vaden v. Discover Bank, 129 S. Ct. 1262, 1273 (2009). Relying on Vaden, the representatives moved to vacate the orders compelling arbitration, arguing that a federal court does not have *diversity* jurisdiction over a § 4 petition to compel arbitration of claims that are part of a pending state court action that includes one or more non-diverse parties not named in the § 4 petition.

The district court granted the motions to vacate, concluding that, while Vaden addressed only federal question jurisdiction, its "look through" analysis implicitly overruled prior federal cases compelling arbitration based upon diversity of citizenship. Northport appealed both rulings; we later consolidated the appeals for submission. Though some of the reasoning in Vaden supports the district court's rulings, we are not persuaded that Vaden implicitly overruled the otherwise on-point decisions in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983), and Advance America Servicing of Arkansas v. McGinnis, 526 F.3d 1170 (8th Cir. 2008). Accordingly, we reverse.

## I. The Law Pre-Vaden.

First enacted in 1925, the core provision of the FAA provides that a written agreement requiring arbitration of controversies arising out of "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 creates "a substantive rule applicable in state as well as federal courts." Southland Corp. v. Keating, 465 U.S. 1, 16 (1984). However, section 4 contains only a limited grant of federal court jurisdiction, permitting a party to seek an order compelling arbitration in "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under Title 28 . . . of the subject

matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. Thus, the FAA "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis." Hall St. Assocs., L.L.C. v. Mattel, Inc., 128 S. Ct. 1396, 1402 (2008), citing Moses H. Cone, 460 U.S. at 25 n.32. In nearly all cases, a party filing a § 4 petition to compel arbitration will allege as an independent basis of federal jurisdiction either a federal question under 28 U.S.C. § 1331, or diversity of citizenship under 28 U.S.C. § 1332(a).

**A. Diversity Cases.** Diversity jurisdiction turns on two issues, is there complete diversity of citizenship between the parties, and does the amount in controversy exceed $75,000. See, e.g., Advance America, 526 F.3d at 1172. Prior to Vaden, all courts of appeals adopted the same approach in resolving § 4 diversity jurisdiction disputes. They determined the first issue, whether there is diversity of citizenship, by looking only to the parties in the federal action to compel arbitration, whether or not the claim(s) to be arbitrated were part of a parallel state court action that included other, non-diverse parties, unless a non-diverse party would be necessary and indispensable to the federal action under Rule 19 of the Federal Rules of Civil Procedure.[1] As the leading case addressing this issue explained, "As with any federal action, diversity of citizenship is determined by reference to the parties named in the proceeding before the district court, as well as any indispensable parties who must be joined pursuant to Rule 19." Distajo, 66 F.3d at 445.

---

[1]See Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 92-93 (4th Cir. 2005); Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1106 (9th Cir. 2002); We Care Hair Dev., Inc. v. Engen, 180 F.3d 838, 842 (7th Cir. 1999); MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 945-46 (11th Cir. 1999); Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 161 (2d Cir. 1998), cert. denied, 525 U.S. 1103 (1999); First Franklin Fin. Corp. v. McCollum, 144 F.3d 1362, 1364 (11th Cir. 1998); Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 445-46 (2d Cir. 1995), cert. denied, 517 U.S. 1120 (1996).

To resolve the second issue, amount in controversy, courts uniformly applied a limited "look through" approach, determining whether "the value at stake in the arbitration" being sought in the federal action could exceed $75,000, regardless whether the claim(s) to be arbitrated were part of a broader parallel state court action in which the total amount in controversy might be greater. Advance America, 526 F.3d at 1174-75; accord Geographic Expeditions, Inc. v. Lhotka, 599 F.3d 1102, 1106-08 (9th Cir. 2010), a post-Vaden case; We Care Hair, 180 F.3d at 841; Hamilton, 150 F.3d at 160-61.

**B. Federal Question Cases.** Unlike the uniform approach to § 4 diversity jurisdiction issues prior to Vaden, a circuit split developed in deciding whether § 4 petitions to compel arbitration were supported by an independent basis of federal question jurisdiction. The majority of circuits to address the issue held that § 4 "should not be interpreted to mean that a federal court has subject matter jurisdiction over an action to compel or stay arbitration merely because the underlying claim raises a federal question." Westmoreland Capital Corp. v. Findlay, 100 F.3d 263, 268 (2d Cir. 1996). Thus, in these circuits, unless the federal action to compel arbitration included an additional claim arising under federal law, § 4 petitioners could not establish an independent basis of federal question jurisdiction. Two circuits disagreed, concluding that "§ 4 directs a district court . . . to 'look through' the § 4 arbitration petition at the underlying dispute in order to determine whether there was a federal question." Cmty. State Bank v. Strong, 485 F.3d 597, 606 (11th Cir. 2007); accord Discover Bank v. Vaden, 396 F.3d 366, 368-70 (4th Cir. 2005). The Supreme Court granted certiorari from the Fourth Circuit's second decision in Vaden to resolve this circuit conflict.

## II. The Decision in Vaden.

Vaden arose when a Discover Bank affiliate sued in state court to recover past-due charges, the credit card holder asserted state law counterclaims, and Discover

Bank filed a § 4 petition in federal court to compel arbitration of the counterclaims. The district court entered an order compelling arbitration, and a divided Fourth Circuit panel affirmed, adopting the "look through" approach to federal question jurisdiction and concluding that at least some of the state law counterclaims were completely preempted by federal law and therefore established a federal question basis for § 4 jurisdiction. Discover Bank v. Vaden, 489 F.3d 594, 597-98 (4th Cir. 2007).

The Supreme Court granted certiorari "in view of the conflict among lower federal courts on whether district courts . . . may 'look through' the petition and examine the parties' underlying dispute to determine whether federal question jurisdiction exists over the § 4 petition." 129 S. Ct. at 1270. The Court addressed that issue and an additional question presented by the procedural posture of the case: if look through is the proper approach to federal question jurisdiction, "may a district court exercise jurisdiction over a § 4 petition when the petitioner's complaint [in the underlying state court action] rests on state law but an actual or potential counterclaim rests on federal law?" Id. at 1268.

Turning to the first question, the Court concluded that "[t]he text of § 4 drives our conclusion that a federal court should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy." Id. at 1273. The phrase "save for [the arbitration] agreement" in § 4 directs the federal court to "assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28'" without it. Id. The reference in § 4 to "the controversy between the parties" logically means "the substantive conflict between the parties." Id., citing Moses H. Cone, 460 U.S. at 25 n.32 ("Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction."). The Court noted that the no-look-through approach adopted by most circuits -

-6-

has curious practical consequences. It would permit a federal court to entertain a § 4 petition only when a federal-question suit is already before the court, when the parties satisfy the requirements for diversity-of-citizenship jurisdiction, or when the dispute over arbitrability involves a maritime contract.

Id. at 1275. The Court was unanimous in adopting the "look through" approach to federal question jurisdiction. See id. at 1279 (Roberts, C.J., dissenting).

Turning to the second question, the Vaden majority held that a district court has federal question jurisdiction under § 4 "only if, 'save for' the [arbitration] agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." Id. at 1275. Because the controversy between Discover Bank and Vaden was "precipitated" by Discover's state-court claim for the balance due on Vaden's account, which did not arise under federal law, and because "a federal counterclaim, even when compulsory, does not establish [28 U.S.C. § 1331] 'arising under' jurisdiction,"[2] the Court held that the district court lacked jurisdiction to entertain Discover's § 4 petition to compel arbitration. Four dissenting justices argued that the "controversy" to which district courts should look under § 4 is "the specific dispute asserted to be subject to arbitration," not a broader underlying controversy that may contain state law claims not subject to arbitration. Vaden, 129 S. Ct. at 1280 (Roberts, C.J., dissenting).

### III. Vaden's Impact on These Cases.

As the district court and the parties acknowledge, Vaden does not directly control these cases because the Supreme Court carefully defined the issues and limited its holding to § 4 petitions based upon federal question jurisdiction:

---

[2]Id. at 1272, citing Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826 (2002).

we approve the "look through" approach to this extent: A federal court may "look through" a § 4 petition to determine whether it is predicated on an action that "arises under"federal law; in keeping with the well-pleaded complaint rule . . . however, a federal court may not entertain a § 4 petition based on the contents, actual or hypothetical, of a counterclaim.

129 S. Ct. at 1273. Here, Northport bases its claim of independent federal jurisdiction on undisputed allegations of diversity of citizenship between the parties to the federal actions, Northport and the representatives, and the requisite amounts in controversy.

In their motions to vacate the orders compelling arbitration, the representatives distorted the Supreme Court's decision in Vaden. First, ignoring the nature of the circuit conflict at issue, and the Court's careful statement of its limited holding, the representatives argued that the Court resolved a broad conflict in the circuits by adopting the "look through" approach for all § 4 jurisdictional issues, diversity jurisdiction as well as federal question jurisdiction. Second, they argued that the Court's discussion of the second issue in Vaden -- the nature of the "look through" to be conducted in federal question cases -- must be applied in deciding diversity of citizenship (and presumably amount in controversy) § 4 jurisdictional disputes.[3] The district court adopted these arguments. Because the "entire actual controversy" in each case involved the non-diverse nursing home administrators, the court vacated the orders compelling arbitration, explaining: "Diversity jurisdiction in this Court was found only because [Northport] broke off a piece of the underlying dispute and sought

_____

[3]In rejecting the dissenters' approach to the federal question look-through the Court unanimously adopted, the Vaden majority explained: "Artful dodges by a § 4 petitioner should not divert us from recognizing the actual dimensions of [the controversy between the parties]. The text of § 4 . . . does not give § 4 petitioners license to recharacterize an existing controversy, or manufacture a new controversy, in an effort to obtain a federal court's aid in compelling arbitration." 129 S. Ct. at 1276. The representatives describe Northport's failure to join the non-diverse administrators, who are Northport employees, as this type of "artful dodge."

to arbitrate it. While this was within the mainstream of case law before <u>Vaden</u>, it clearly cannot be done now."

On appeal, Northport argues that <u>Vaden</u> did not mandate a new analysis for § 4 diversity jurisdiction disputes and therefore our prior decision in <u>Advance America</u> is controlling. The representatives counter by arguing that, after <u>Vaden</u>, courts must "look through" to "the whole controversy as framed by the parties" in deciding § 4 diversity jurisdiction disputes. They further argue that this is not contrary to <u>Advance America</u>, because that case involved only an amount-in-controversy diversity dispute, and we applied a "look through" approach in resolving that issue. This contention is without merit. In <u>Advance America</u> we looked through only to "the value at stake in the arbitration" sought to be compelled, 526 F.3d at 1174, not to "the whole controversy as framed by the parties" in a parallel state court action. If the nature of the "look through" is the issue -- and without question some type of look through is needed to determine the amount in controversy for diversity jurisdiction purposes -- the look through we conducted in <u>Advance America</u> is comparable to the look through unsuccessfully urged by the dissenting Justices in <u>Vaden</u>.

This case involves diversity of citizenship, not amount in controversy, and on that issue the pre-<u>Vaden</u> circuit decisions were unanimous in looking only to the citizenship of the parties to the federal action. Of course, the Supreme Court's resolution of a different circuit split in <u>Vaden</u> *could* implicitly overrule this line of diversity jurisdiction circuit precedents, even though the Court carefully limited its decision to federal question jurisdiction issues. Were we to conclude that <u>Vaden</u> has that impact, then <u>Advance America</u> would not be controlling precedent. "[I]t is well settled that a panel may depart from circuit precedent based on an intervening opinion of the Supreme Court that undermines the prior precedent." <u>Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.</u>, 551 F.3d 812, 821 (8th Cir. 2009).

The fundamental flaw in the representatives' contention that <u>Vaden</u> implicitly overruled prior circuit court diversity jurisdiction decisions (favorably cited in <u>Advance America</u>) is that it ignores the underlying facts and the Supreme Court's decision in <u>Moses H. Cone</u>.[4]  In that case, the Supreme Court stated that the independent basis of federal jurisdiction was diversity of citizenship.  But it did not discuss that threshold issue, despite noting the presence of a non-diverse party who made the parallel state court action non-removable.  460 U.S. at 7 & n.4.  In deciding that abstention principles did not require a stay of the federal action, and affirming the order compelling arbitration, the Court explained, "Although the Hospital will have to litigate the arbitrability issue in federal rather than state court, that dispute is easily severable from the merits of the underlying disputes."  <u>Id.</u> at 20-21.

<u>Moses H. Cone</u> is factually on all fours with these cases.  Even if no party challenged diversity jurisdiction, that the Supreme Court did not even discuss the issue is telling because in other cases it has noted that federal courts are obligated to consider lack of subject matter jurisdiction <u>sua sponte</u>.  <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 93-95 (1998), citing <u>Great So. Fire Proof Hotel Co. v. Jones</u>, 177 U.S. 449, 453 (1900).  Thus, the representatives' contention requires us to assume both that the Court overlooked a serious diversity jurisdiction issue in <u>Moses H. Cone</u> and then implicitly overruled <u>Cone</u>'s jurisdictional underpinnings in <u>Vaden</u>.  This is contrary to well-established principles.  The Supreme Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."  <u>Shalala v. Ill. Council on Long Term Care, Inc.</u>, 529 U.S. 1, 18 (2000).

In addition to a strong reluctance to assume that the Court implicitly overruled an earlier precedent, we find many clues in the majority opinion in <u>Vaden</u> that it did not intend to overrule <u>Moses H. Cone</u> *sub silentio*.  The Court cited <u>Moses H. Cone</u>

---

[4]We note that the Second Circuit in <u>Distajo</u>, the leading pre-<u>Vaden</u> diversity case, cited the Supreme Court's earlier decision in <u>Moses H. Cone</u>.  66 F.3d at 446. <u>See also</u> <u>First Franklin</u>, 144 F.3d at 1364.

approvingly. It carefully limited its statement of the issues and holding to federal question jurisdiction. It cited the circuit court cases creating the federal question conflict but did not cite any of the circuit court § 4 diversity cases. This was not likely inadvertent because the circuit court opinions adopting the look through approach to federal question issues cited their earlier no-look-through diversity decisions approvingly.

Moreover, in describing the "curious practical consequences" of the no-look-through approach to federal question issues, the Court explained that it limited federal courts to entertaining § 4 petitions "only when a federal-question suit is already before the court, *when the parties satisfy the requirements for diversity-of-citizenship jurisdiction*, or when the dispute over arbitrability involves a maritime contract." 129 S. Ct. at 1275 (emphasis added). In other words, while the Court adopted the look-through approach to expand the universe of § 4 cases in which there will be an independent basis of federal question jurisdiction to be more compatible with diversity jurisdiction cases (i.e., Moses H. Cone), the representatives urge us to read Vaden as severely contracting pre-existing § 4 diversity jurisdiction. Finally, we think it significant that Vaden relied on traditional principles of federal question jurisdiction, such as the well-pleaded complaint rule, in fashioning its look-through approach. A traditional principle of diversity jurisdiction is that it cannot be defeated by a non-diverse joint tortfeasor who is not a party to the federal action, unless that party is indispensable under Rule 19. Temple v. Synthes Corp., 498 U.S. 5, 7 (1990).

For all these reasons, we decline to conclude that Moses H. Cone was implicitly overruled *sub silentio* in Vaden. Therefore, Moses H. Cone continues to be precedent that resolves these appeals. As the Supreme Court has frequently instructed, "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484

-11-

(1989), quoted in <u>Agostini v. Felton</u>, 521 U.S. 203, 237 (1997).  Likewise, <u>Vaden</u> did not implicitly overrule our decision in <u>Advance America</u> and the pre-<u>Vaden</u> § 4 diversity jurisdiction decisions from other circuits.  Accord <u>L.A. Fitness Int'l LLC v. Harding</u>, 2009 WL 3676272, at *2-3 (W.D. Wash., Nov. 2, 2009).  Therefore, we conclude that diversity of citizenship is determined in these cases by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be joined pursuant to Rule 19.[5]

## IV. An Indispensable Party Issue.

Alternatively, the representatives argue that the district court's orders should be affirmed applying pre-<u>Vaden</u> § 4 diversity case law because the non-diverse nursing home administrators are necessary parties under Rule 19(a)(1) who cannot be joined without destroying diversity jurisdiction, requiring dismissal of the actions under Rule 19(b).  The district court rejected this argument in denying Rutherford's motion to dismiss at an early stage of that lawsuit.  The argument is inconsistent with the Supreme Court's decision that Rule 19 did not change the long-standing rule "that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."  <u>Temple</u>, 498 U.S. at 7.  In the arbitration context, to our knowledge every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration.  See <u>Brown v. Pac. Life</u>

---

[5]Because we decide the appeals on this basis, we need not consider Northport's alternative argument that Robinson's motion to dismiss for lack of subject-matter jurisdiction was untimely because the district court order compelling arbitration was final and appealable.  <u>See generally</u> 9 U.S.C. § 16(b)(2) (appeals may not be taken from interlocutory orders "directing arbitration to proceed under section 4"); <u>Smart v. Sunshine Potato Flakes, L.L.C.</u>, 307 F.3d 684, 685 (8th Cir. 2002); <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 571 (2004) (challenges to subject-matter jurisdiction may be raised any time prior to final judgment).

Ins. Co., 462 F.3d 384, 393-94 (5th Cir. 2006); Am. Gen. Life, 429 F.3d at 92-93; Painewebber, Inc. v. Cohen, 276 F.3d 197, 202-06 (6th Cir. 2001); MS Dealer Serv. Corp., 177 F.3d at 946; Distajo, 66 F.3d at 446; Bio-Analytical Servs., Inc. v. Edgewater Hosp., Inc. 565 F.2d 450, 453 & n.3 (7th Cir. 1977). We agree with these decisions. We find the contrary ruling in Cytec Industries, Inc. v. Powell, 630 F. Supp. 2d 680, 686-87 & n.2 (N.D.W. Va. 2009), unpersuasive.

The orders of the district court dismissing these cases for lack of subject matter jurisdiction are reversed, and the cases are remanded with directions to re-enter the prior orders compelling arbitration.

_____