# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3381

_____

CMH Homes, Inc.; Vanderbilt Mortgage & Finance, Inc.,

*Plaintiffs - Appellants*,

v.

Thomas R. Goodner; Linda Goodner,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: April 10, 2013
Filed: September 5, 2013

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and ROSE,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Thomas and Linda Goodner sued Vanderbilt Mortgage & Finance, Inc., CMH Homes, Inc., and Clayton Homes, Inc., which owns Vanderbilt and CMH Homes, in state court in Arkansas. Vanderbilt and CMH Homes (together, "the companies")

_____

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa, sitting by designation.

filed a petition in the United States District Court for the Western District of Arkansas, alleging that the Goodners' claims are subject to mandatory arbitration. The Goodners moved to dismiss the petition, arguing that the federal court lacked subject matter jurisdiction. The district court dismissed the petition. We vacate the district court's judgment and remand for further proceedings.

I.

In September 2007, the Goodners purchased a manufactured home from CMH Homes at a total cost of $101,867.92. Vanderbilt provided financing for the purchase. Some time after the purchase, the Goodners joined a class action lawsuit filed against Clayton Homes and CMH Homes in the Circuit Court of Miller County, Arkansas, on behalf of approximately 120,000 nationwide buyers of manufactured homes (the "*Meredith* suit"). *See* Compl., *Meredith v. Clayton Homes, Inc.*, No. CV-2005-72-2 (Ark. Cir. Ct. Feb. 17, 2005). The plaintiffs in the *Meredith* suit alleged that the purchase price of their manufactured homes included the cost of the wheels and axles used to transport the structures, but that the defendant companies improperly kept the wheels and axles after delivery and resold them to recycling facilities.

On May 29, 2009, the state court approved a settlement in the *Meredith* suit. Final Order and Judgment Approving Settlement, *Meredith v. Clayton Homes, Inc.*, No. CV-2005-72-2 (Ark. Cir. Ct. May 29, 2009). The state court plaintiffs valued the benefits made available to the class in the *Meredith* settlement between $77.4 million and $92.5 million. As part of the settlement, the class members agreed not to bring any future legal action against the released parties "based on, arising out of, or in any way relating or pertaining to," *inter alia*, claims that "could have been asserted" in the *Meredith* class action.

On November 10, 2011, the Goodners filed a putative class action suit in Arkansas state court, claiming violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.*, and the Arkansas Unfair Practices Act, Ark. Code Ann. § 4-75-201 *et seq.*, as well as unjust enrichment and constructive fraud. They alleged that CMH Homes referred buyers of its manufactured housing to Vanderbilt for financing without disclosing that CMH Homes received a "kickback" or "commission" from Vanderbilt totaling 4% of CMH Homes's gross profits on each home sale. The complaint disclaimed punitive damages, and the Goodners each signed sworn affidavits stipulating that they did not seek more than $75,000 in damages individually or on behalf of any class member, and not more than $4,999,999 for the class, including attorney's fees, costs, and treble damages, as provided by statute. *See* Ark. Code Ann. §§ 4-75-211(b)(3), 4-88-113(f).

Clayton Homes, CMH Homes, and Vanderbilt removed the Goodners' suit to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and federal question jurisdiction. 28 U.S.C. § 1331. Vanderbilt and CMH Homes also petitioned the district court to compel arbitration, pointing to an arbitration clause in the parties' home-purchase contract. The Goodners moved to remand the state court suit and to dismiss the arbitration petition for lack of subject matter jurisdiction. The district court granted the Goodners' motion to remand and dismissed the petition to compel arbitration, concluding that federal question jurisdiction did not exist and that the amount in controversy was capped short of the required minimum amount in controversy for diversity jurisdiction over the underlying action. *See* 9 U.S.C. § 4; 28 U.S.C. §§ 1331, 1332. This appeal concerns only the district court's ruling on the arbitration petition.

The district court determined the amount in controversy by applying the analysis set forth in *Vaden v. Discover Bank*, 556 U.S. 49 (2009), where the Supreme Court directed federal courts to "look through" an arbitration petition "to the parties' underlying substantive controversy" to determine whether federal jurisdiction is

present. *Id.* at 62. The district court acknowledged that *Vaden* had addressed federal question jurisdiction, not diversity jurisdiction, but decided that the *Vaden* approach was nonetheless "the right one to use" to evaluate the amount in controversy. *CMH Homes, Inc. v. Goodner*, No. 6:12-cv-06007, 2012 WL 3961718, at *3 (W.D. Ark. Sept. 10, 2012). Examining "the whole controversy as framed by the parties" in the state court action, *Vaden*, 556 U.S. at 67, the district court concluded that it lacked jurisdiction, incorporating its decision in the *Goodner* removal case. There, the court had decided that the Goodners' stipulations limited their recovery in the state court action to not more than $75,000 on behalf of any class member and not more than $5 million for the whole class. *See* 28 U.S.C. § 1332(a), (d). The court also determined that the case did not present a federal question, because the companies raised federal law only in defense against the Goodners' state law claims. *CMH Homes*, 2012 WL 3961718, at *2; *see also Goodner v. Clayton Homes, Inc.*, No. 4:12-cv-04001, 2012 WL 3961306, at *7-8 (W.D. Ark. Sept. 10, 2012). The court therefore dismissed the petition for lack of subject matter jurisdiction. *CMH Homes*, 2012 WL 3961718, at *5.

On appeal, Vanderbilt and CMH Homes argue that the district court erred by concluding that it lacked diversity jurisdiction. Rather than apply *Vaden*, the companies urge, the district court should have followed this court's pre-*Vaden* decision in *Advance America Servicing of Arkansas, Inc. v. McGinnis*, 526 F.3d 1170 (8th Cir. 2008), a diversity case, and determined the amount in controversy by evaluating "the value at stake in the arbitration." *Id.* at 1174. The companies contend that it is legally possible that the value at stake in the arbitration will exceed $75,000. The Goodners respond that the district court correctly concluded that *Vaden* required it to determine the amount in controversy by looking through to the underlying state court action. 556 U.S. at 66.

II.

The Federal Arbitration Act provides that a party aggrieved by the failure of another party to arbitrate under a written agreement may petition for an order compelling arbitration. 9 U.S.C. § 4. A district court may consider the petition if, "save for" the arbitration agreement, it would have jurisdiction under Title 28 in a civil action "of the subject matter of a suit arising out of the controversy between the parties." *Id.* The Act itself confers no federal jurisdiction, but instead requires "an independent jurisdictional basis." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). Federal diversity jurisdiction, the source of jurisdiction that the companies assert here, requires diversity of citizenship and an adequate sum or value in controversy. 28 U.S.C. § 1332(a).

In *Advance America*, this court considered whether a § 4 petitioner seeking to compel arbitration of claims asserted in a putative state court class action had demonstrated an adequate amount in controversy. 526 F.3d at 1172. To determine the amount in controversy, the court reasoned that "the object of the action before the court" was to compel arbitration of an underlying dispute between the parties, and that the object of the federal litigation was thus "the value at stake in the arbitration." *Id.* at 1173-74. We agreed with the district court that it lacked jurisdiction, because the value of the disputed transactions at issue in arbitration was less than $1,000. *Id.* at 1176.

In *Vaden*, the Supreme Court considered whether a district court has jurisdiction over a § 4 arbitration petition when the state court plaintiff's complaint raises only issues of state law, but an "actual or potential counterclaim" in the state court suit presents a federal question. 556 U.S. at 53. The Court acknowledged the view of most courts of appeals that the "controversy between the parties," for purposes of § 4, was "only the parties' discrete dispute over the arbitrability of their claims." *Id.* at 63. But the Court thought this position was "difficult to square with

the statutory language," *id.*, which directs the district court to determine whether it would have jurisdiction "*save for* [the arbitration] agreement," 9 U.S.C. § 4 (emphasis added), not *on account of* the arbitration agreement. Instead, the Court held, § 4 provides for federal jurisdiction "only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." 556 U.S. at 66. Therefore, a district court must "look through" the petition to the parties' "underlying substantive controversy" to determine whether federal jurisdiction is present. *Id.* at 62. Because the substantive controversy in *Vaden*, in light of the well-pleaded complaint rule, did not present a federal question, the district court there lacked jurisdiction.

We think it follows from *Vaden* that the district court in this case properly "looked through" to the underlying controversy between the parties to determine the amount in controversy. Although *Vaden* considered federal question jurisdiction, its reasoning applies when a court evaluates whether the minimum amount in controversy is present for purposes of diversity jurisdiction. *Accord Am. Gen. Fin. Servs. of Ala., Inc. v. Witherspoon*, 426 F. App'x 781, 782-83 (11th Cir. 2011) (per curiam). Section 4 directs a district court to assess whether, absent an arbitration agreement, it would have jurisdiction under Title 28 over "the controversy" presented in "a civil action." This direction does not depend on which section of Title 28 might be the basis for jurisdiction. If, as the companies contend, federal jurisdiction depended on the value at stake in the arbitration, then a § 4 petitioner could "recharacterize an existing controversy, or manufacture a new controversy" to invoke federal jurisdiction. *Vaden*, 556 U.S. at 68. *Vaden* precludes that approach, and requires us to depart from the reasoning of *Advance America*. *See Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000).

The companies maintain that *Northport Health Services of Arkansas, LLC v. Rutherford*, 605 F.3d 483 (8th Cir. 2010), already determined that *Vaden* did not undermine *Advance America*. *Rutherford*, however, involved diversity of citizenship,

not amount in controversy: the parties to the federal arbitration action were completely diverse, but the state court action raising the claims allegedly subject to arbitration included non-diverse parties. *Id.* at 485-86. *Rutherford* observed that *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), was "factually on all fours" with pre-*Vaden* circuit decisions that "were unanimous in looking only to the citizenship of the parties to the federal action." 605 F.3d at 489-90. While *Moses H. Cone* did not discuss jurisdiction, this court treated *Cone* as authoritative on the diversity-of-citizenship question and concluded that *Vaden* had not implicitly overruled it. *Id*. at 490-91. At the same time, however, *Rutherford* acknowledged that "some type of look through is needed to determine the amount in controversy for diversity jurisdiction purposes," and "the look through we conducted in *Advance America* is comparable to the look through unsuccessfully urged by the dissenting Justices in *Vaden*." *Id*. at 489.

There are sound reasons for limiting *Rutherford* and distinguishing between diversity of citizenship and amount in controversy when applying § 4. For one thing, there is no Supreme Court decision like *Moses H. Cone* that suggests, even implicitly, that the Court would look only to the amount in controversy in a federal arbitration action to determine jurisdiction. *Moses H. Cone* was central to the analysis in *Rutherford*; it is inapposite here.

As the Supreme Court has observed, moreover, there is "no inherent logical connection" between the requirement that parties be diverse and the requirement that the matter in controversy be valued above the jurisdictional minimum. *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 562 (2005). The diversity-of-citizenship requirement has a "special nature and purpose," *id*. at 566, to provide a federal forum "for important disputes where state courts might favor, or be perceived as favoring, home-state litigants." *Id.* at 553-54. *Rutherford* emphasized the "traditional principle of diversity jurisdiction" that "it cannot be defeated by a non-

diverse joint tortfeasor who is not a party to the federal action, unless that party is indispensable under Rule 19." 605 F.3d at 490-91.

The amount-in-controversy requirement, on the other hand, is designed "to ensure that a dispute is sufficiently important to warrant federal-court attention." *Exxon Mobile Corp.*, 545 U.S. at 562. In that respect, it is comparable to federal question jurisdiction, 28 U.S.C. § 1331, which exists because the protection of federal rights and interpretation of federal law are matters that Congress deemed sufficiently important to warrant federal-court attention. *See Boys Mkts, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 246 n.13 (1970). The federal question statute, moreover, formerly included an amount-in-controversy requirement that was designed to reduce congestion and ensure that disputes in federal court were sufficiently important. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 350-51 (1961). If Congress were to reinstate that rule in federal question cases, then *Vaden* dictates that a federal court considering a § 4 petition would look through to the underlying action to determine whether it could be litigated in federal court. Nothing in the text of § 4 or the rationale of *Vaden* suggests that a court should look through differently to determine whether a case meets the amount threshold for federal jurisdiction under § 1332.

*Vaden* itself suggests this is what the Court had in mind. After explaining that a district court considering its jurisdiction should "look through" a § 4 petition to the underlying state-court action, the Court resolved the case by concluding that the plaintiff's "complaint in Maryland state court plainly did not 'arise under' federal law, *nor did it qualify under any other head of federal-court jurisdiction. See supra*, at [54], and n. 1." 556 U.S. at 66 (emphasis added). The cross-referenced text and footnote explained that the plaintiff sought to recover $10,610.74, plus interest and counsel fees, and thus "apparently had no access to a federal forum for its suit against Vaden on the basis of diversity-of-citizenship jurisdiction," because "[u]nder that head of federal-court jurisdiction, the amount in controversy must 'excee[d] . . .

-8-

$75,000.' 28 U.S.C. § 1332(a)." *Id*. at 54 & n.1. There would have been little reason for the Court to cite the insufficient amount in controversy from the state-court action unless that amount—rather than the amount at issue in the § 4 arbitration action—were the proper focus of a federal court determining its jurisdiction.

For these reasons, we believe the district court correctly reasoned that *Vaden* undermines *Advance America* and requires our departure from that precedent. To resolve the jurisdictional question in this case, therefore, we consider whether the amount in controversy between the Goodners and the companies satisfies the jurisdictional minimum by looking through to "the entire, actual controversy between the parties, as they have framed it." *Vaden*, 556 U.S. at 66 (internal quotation omitted).

### III.

Following the *Vaden* approach, the district court looked through the arbitration petition to the state court complaint to determine the amount in controversy. The court cited its order granting the Goodners' motion to remand the removed class action suit to state court, and ruled that for the same reasons, the court lacked jurisdiction over the § 4 petition. In the remand order, the district court had concluded that the Goodners' stipulations that they sought no more than $75,000 individually and no more than $4,999,999 for the entire class were "sufficiently binding to keep this case out of federal court." *Goodner*, 2012 WL 3961306, at *7. On that basis, the court determined that it would not, "save for" the arbitration agreement, have jurisdiction over "a suit arising out of the controversy between the parties," 9 U.S.C. § 4, and it dismissed the petition.

In this appeal, the Goodners presume without explanation that a court applying *Vaden* would look through only to their individual claims in the state court complaint. The companies seek to arbitrate only the individual claims, but the point of

*Vaden*—which the Goodners urge us to apply—is that the court should not focus merely on the claims at issue in arbitration, but rather on the "full-bodied controversy," 556 U.S. at 68 n.16, even if the claims at issue in arbitration by themselves might otherwise be adjudicated in state court. *Id*. at 69 n.18. The entire, actual controversy between the Goodners and the companies, as they have framed it, is the Goodners' putative class action lawsuit in Arkansas state court. Although the unnamed members of the uncertified class are not parties to the state court action, *see Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011), the putative class action is a controversy, and the parties to that controversy are the Goodners and the state-court defendants. *See* 28 U.S.C. § 1332(d). The district court correctly looked through to the class action.

The case nonetheless must be remanded for the district court to calculate an amount in controversy and to determine on that basis whether it has jurisdiction over the putative class action under 28 U.S.C. § 1332(d)(2). The district court, applying this court's decision in *Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1073-74 (8th Cir. 2012), thought the stipulation of the plaintiffs was sufficient to establish that the amount in controversy did not exceed $5,000,000. But the Supreme Court later made clear that *Rolwing* was wrong, because "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013). The Goodners' stipulations, therefore, could not "reduce[] the value of the putative class members' claims." *Id*. Whether the amount in controversy in the putative class action exceeds the jurisdictional minimum is a fact-intensive question that the district court is better equipped to address in the first instance. *See Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009).

The district court also determined that the Goodners' stipulations established that the amount in controversy on their individual claims did not exceed the jurisdictional minimum. The companies argue, among other things, that the

Goodners' separate individual stipulations not to seek more than $75,000 must be aggregated, because they seek together "to enforce a single title or right, in which they have a common and undivided interest," and do not assert individual claims based on "separate and distinct" contracts. The Goodners contend that reliance on the stipulations is unnecessary in any event, because the amount in controversy on their individual claims is at most $3,000 plus a reasonable attorney's fee. We leave to the district court in the first instance whether to calculate the amount in controversy on the individual claims, aside from the stipulations, along with the amount in controversy for the putative class action.

\*     \*     \*


The judgment of the district court is vacated, and the case is remanded for further proceedings.

_____