# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 10, 2021

Lyle W. Cayce
Clerk

No. 21-10023

ADT, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Kamala Richmond; Darryl Richmond,
*Individually and as next friend of* D.R., J.R. and E.R., *minors*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
No. 4:20-CV-759

Before King, Smith, and Haynes, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Federal courts can enforce an arbitration agreement only if they could hear the underlying "controversy between the parties." 9 U.S.C. § 4. In *Vaden v. Discover Bank*, 556 U.S. 49 (2009), the Court told us to define that "controversy" by looking to the whole dispute, including any state-court pleadings. The question here is whether we must define the "parties" that way, too. Because the statute makes clear that we may not, we vacate the dismissal and remand.

No. 21-10023

I.

Telesforo Aviles worked for ADT, L.L.C., installing security systems in customers' homes. After a decade of service, Aviles began spying on customers using the cameras he had installed.

ADT discovered Aviles's misconduct, fired him, and reported him to the authorities. But by then, Aviles had spied on more than two hundred customers, accessing some accounts hundreds of times.

Kamala Richmond and her family are citizens of Texas. They say they were among Aviles's victims. After Aviles's conduct became known, the Richmonds sued Aviles and ADT in Texas state court on sundry state-law claims, seeking more than $1 million in damages. But the Richmonds' contract with ADT contained an arbitration clause. To enforce that clause, ADT brought this federal suit under § 4 of the Federal Arbitration Act. ADT premised jurisdiction on the complete diversity between the Richmonds and ADT, which is a citizen of Florida and Delaware.

A federal court can hear a suit to compel arbitration only if it could hear "a suit arising out of the controversy between the parties." 9 U.S.C. § 4. To define that "controversy," a federal court must "look through" the § 4 petition "to the parties' underlying substantive controversy." *Vaden*, 556 U.S. at 62. If a federal court could hear a suit arising from that "whole controversy," *id.* at 67, then that court can hear the § 4 suit, *id.* at 70.

Applying *Vaden*, the district court looked through ADT's federal suit to the Richmonds' state-court complaint, which named Aviles and ADT as defendants. From that, the court concluded that the "whole controversy" included Aviles, ADT, and the Richmonds. But those parties lacked diversity of citizenship because Aviles, like the Richmonds, is from Texas. *See* 28 U.S.C. § 1332(a)(1). On that ground, the court dismissed ADT's suit for want of diversity jurisdiction.

2

ADT asks us to revive its suit.  ADT says that *Vaden* doesn't extend to diversity of citizenship and that every federal circuit to consider the question agrees.  The Richmonds acknowledge the weight of opposing authority but contend that *Vaden* requires affirmance.  Although neither side stresses § 4's text, it resolves this case.

## II.

*Vaden* tells us to look to the "whole controversy," not just the petition to compel arbitration, to define the controversy over which the petition asserts federal jurisdiction.  *See Vaden*, 556 U.S. at 67.  The district court went a step further:  It applied *Vaden*'s look-through test to define the "parties" to that controversy.  That was error, so we vacate the dismissal and remand.

## A.

Section 4 is clear:  The only controversy that bears on our jurisdiction is "the controversy *between the parties*."  9 U.S.C. § 4 (emphasis added).  Those "parties" are only the parties to the suit to compel arbitration.

> Section 4 empowers
>
> *[a] party aggrieved* by the alleged failure, neglect, or refusal of *another to arbitrate under a written agreement for arbitration* [to] petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy *between the parties*, for an order directing that such arbitration proceed in the manner provided for in such agreement.

*Id.* (emphasis added).  Beyond the quoted excerpt, the word "party" or "parties" appears at six other points in § 4.

At all those points, § 4 refers to one or both of two parties.  The first are those who "fail[ ], neglect, or refus[e] . . . to arbitrate under a written agreement for arbitration."  *Id.*  The second are those whom the first aggrieve

by not submitting to arbitration. *See id.* In other words, § 4 uses "parties" to mean only the parties to the § 4 suit: those who refuse to abide their agreement to arbitrate and those whom they aggrieve by doing so. Non-parties to that suit do not matter.

Reading "parties" more broadly would make no textual sense. To take one example, if "the making of the agreement for arbitration . . . is not in issue," a court must "order . . . the parties to proceed to arbitration." *Id.* That provision applies easily to those who have agreed to arbitrate. But how could it apply to *non*parties? A court can't compel a party to arbitrate when it never agreed to. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19–20 (1983).

*Vaden* does not control. There, the Court explained only how we must define the § 4 "controversy." It never defined the "parties" whom § 4 describes. *Vaden*'s facts show why.

*Vaden* was a federal-question case. *See Vaden*, 556 U.S. at 70. And unlike diversity jurisdiction, federal-question jurisdiction turns not on the identity of the parties but on the subject matter of the controversy.[1]

Even if the *Vaden* Court could have decided who the "parties" are, it did not. *Vaden* spoke only to the word "controversy." Section 4, the Court explained, "does not invite federal courts to dream up counterfactuals when actual litigation has defined the parties' *controversy*." *Vaden*, 556 U.S. at 68 (emphasis added). "The relevant question," the majority persisted, "is whether the *whole controversy* between the parties—not just a piece broken off

---

[1] *Compare* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), *with* 28 U.S.C. § 1332(a)(1) (requiring complete diversity among the parties to sustain diversity jurisdiction).

*from that controversy*—is *one* over which the federal courts would have jurisdiction." *Id.* at 67 (emphasis added). The majority even framed the question presented as whether "a district court, if asked to compel arbitration pursuant to § 4, [should] 'look through' the petition and grant the requested relief if the court would have federal-question jurisdiction over *the underlying controversy*." *Id.* at 53 (emphasis added).

Although *Vaden* did not define "parties," both its language and its method support our reading. After looking to § 4's text, the Court opined that it refers only to the two parties we've identified: the party "seek[ing] arbitration pursuant to a written agreement" and the party who "resists." *Id.* at 62. And though *Vaden* drew a partial dissent, every Justice agreed that the Court's task was to interpret § 4's text.[2] We do likewise, drawing the meaning of "parties" directly from that section.

*Moses H. Cone* also favors our view. Moses Cone Hospital, a North Carolina citizen, had contracted with Mercury, an Alabama citizen. The contract contained an arbitration clause. Rather than arbitrate, the hospital sued Mercury and a North Carolina architect, who hadn't signed the agreement to arbitrate, in state court. Mercury then moved in federal court to compel arbitration on diversity-of-citizenship grounds. *Moses H. Cone*, 460 U.S. at 7. The federal district court stayed Mercury's suit, citing the state proceedings. *Id.*

The Court in *Moses H. Cone* considered only the appealability and

---

[2] *Compare Vaden*, 556 U.S. at 52–53 (framing the question as whether § 4's text dictates the "look through" approach); *id.* at 62 ("The text of § 4 drives our conclusion" that the look-through test applies), *with id.* at 72–73 (Roberts, C.J., concurring in part and dissenting in part) ("I agree with the Court that a federal court . . . should 'look through' the dispute. . . . But look through to what? The statute provides a clear and sensible answer. . . . [But the majority's] approach is contrary to the language of § 4.").

propriety of the district court's stay, not jurisdiction. *Id.* at 8. But if the Richmonds were right that the FAA requires federal courts to determine the "parties" from the first-filed state-court complaint, the Court should have dismissed[3] because the architect's inclusion in the hospital's state-court suit destroyed complete diversity. *See Moses H. Cone*, 460 U.S. at 7 n.4. The Court instead affirmed the Fourth Circuit's decision to reverse the stay and to remand. *Id.* at 29. The Court passed over the jurisdictional question, leaving untouched the Fourth Circuit's forceful holding that diversity jurisdiction was proper.[4]

---

[3] *See Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 490 (8th Cir. 2010) ("Even if no party challenged diversity jurisdiction, that the Supreme Court did not even discuss the issue [in *Moses H. Cone*] is telling because in other cases it has noted that federal courts are obligated to consider lack of subject matter jurisdiction *sua sponte*.").

[4] *See In re Mercury Constr. Corp.*, 656 F.2d 933, 941–42, 944–46 (4th Cir. 1981) (en banc). The Fourth Circuit explained, in relevant part,

> [T]his case plainly qualified for relief under Section 4. . . . [T]here was an independent basis for federal jurisdiction (*i.e.*, diversity). . . . [T]he right of Mercury to a stay of proceedings and an order of arbitration under Section 4 is beyond dispute.
>
> . . .
>
> [The Hospital] joined as a codefendant its own agent, the Architect, and again it seems fair to assume that this was to avoid removal of the action to the federal court. But, even assuming there is some controversy between the Hospital and the Architect, to which Mercury is not a party, why should Mercury be delayed in its right to a prompt resolution by arbitration, without the expense of long and protracted litigation, as the parties had solemnly agreed, because of some controversy between the Hospital and its Architect?
>
> . . .
>
> [F]ederal procedure under the [FAA], as established in the decisions, would not permit the Hospital, by the addition of the Architect as a codefendant, to frustrate and defeat arbitration; the federal court would simply sever the arbitrable claim and order the parties to proceed to

No. 21-10023

Other circuits agree that we must determine diversity of citizenship in a § 4 suit from the parties to that suit. In *Hermès of Paris, Inc. v. Swain*, 867 F.3d 321 (2d Cir. 2017), the court observed that § 4's text refers only to "the parties to the petition to compel arbitration." *Id.* at 326; *see also Doctor's Assocs. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) ("The 'parties' to which § 4 of the FAA refers are the parties to the petition to compel."). On that ground, the court rejected the claim that courts must look through the § 4 petition to determine who the parties are. *Swain*, 867 F.3d at 325–26. The Eighth Circuit has agreed,[5] noting that every circuit precedent before *Vaden* had looked "only to the citizenship of the parties to the [§ 4] action." *Rutherford*, 605 F.3d at 489.[6]

---

arbitration of that claim.

*Id.* at 941–42, 944–46.

[5] *See Rutherford*, 605 F.3d at 491 ("[W]e conclude that diversity of citizenship [in a § 4 case] is determined . . . by the citizenship of the parties named in the [§ 4] proceedings . . . , plus any indispensable parties who must be joined pursuant to Rule 19.").

[6] *Swain* and *Rutherford* correctly held that when a federal court assesses diversity of citizenship in a § 4 suit, the parties listed in the § 4 petition, plus any indispensable parties, are the only ones that count. *See Swain*, 867 F.3d at 324 & n.4; *Rutherford*, 605 F.3d at 491.

Yet both cases proclaimed that *Vaden* applies only in federal-question cases. *See Swain*, 867 F.3d at 325; *Rutherford*, 605 F.3d at 488 (making that point). Nothing in *Vaden* or § 4 supports that view. True, *Vaden* addressed federal-question jurisdiction. But it advanced no new principles of federal-question jurisdiction. *Vaden* was a statutory-interpretation case. It looked to § 4's text to define a § 4 "controversy." And § 4 applies regardless of the claimed basis for federal jurisdiction.

Under § 4, a federal court may hear a petition to compel arbitration only if, "save for" the arbitration agreement, it would "have jurisdiction *under title 28* . . . of the subject matter of a suit" over the parties' controversy. 9 U.S.C. § 4 (emphasis added). Title 28 encompasses all the usual bases for federal jurisdiction, from a federal question to diversity. *See* 28 U.S.C. §§ 1330–1389. We conclude from this that we always must look to the parties' whole dispute to define the controversy over which the petition asserts jurisdiction. *See Vaden*, 556 U.S. at 66 ("§ 4 . . . confines federal courts to the jurisdiction they would

No. 21-10023

Reading "parties" to mean only the parties to the § 4 petition also advances the core policy behind the look-through test. *Vaden* stressed that looking only to a § 4 petition to define the parties' controversy would invite litigants to manipulate federal jurisdiction. *See Vaden*, 556 U.S. at 66–70. The look-through test defeats artful pleading by ensuring that federal jurisdiction over a petition to compel arbitration corresponds with federal jurisdiction over the parties' actual dispute.

Likewise, uncritically crediting how the first litigant defines the parties, as the Richmonds suggest, would invite "[a]rtful dodges" of federal jurisdiction. *Id.* at 67. After agreeing to arbitrate its claims against a diverse defendant, a party could breach that compact, sue in state court, and join a

---

have save for the arbitration agreement." (cleaned up)).

Our precedents affirm that straightforward reading of § 4. We have explained that courts must look through the petition to compel arbitration to ascertain whether the underlying controversy is ripe. *See Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 923 (5th Cir. 2017). "*Vaden*'s holding," we've said, "necessarily implies that any of the reasons that a federal court may lack subject matter jurisdiction over the underlying dispute—*e.g.*, ripeness—would similarly prevent a district court from having jurisdiction to compel arbitration." *Id.* And in *Badgerow v. Walters*, 975 F.3d 469 (5th Cir. 2020), *cert. granted*, 141 S. Ct. 2620 (2021), we applied *Vaden*'s look-through test to find supplemental jurisdiction over a petition to vacate an arbitral award. *Id.* at 471–72, 474. The petitioner had sought to vacate only the arbitrators' dismissal of her state-law claims. *Id.* at 472. But we found, in the underlying dispute, a federal question that shared with the petitioner's state-law claims common facts supporting supplemental jurisdiction. *Id.* at 474–75.

We thus have applied the look-through test to assess our jurisdiction over cases implicating supplemental jurisdiction, *see id.* at 474–75, and traditional limits on judicial power, *see Lower Colo. River Auth.*, 858 F.3d at 923. Given those precedents and the text of § 4, it would be freakish to exempt diversity jurisdiction, and diversity jurisdiction alone, from the look-through inquiry.

*Vaden* does not apply here because it defines only the § 4 "controversy," not the "parties" to that controversy. The look-through test defines the "controversy" no matter the basis for federal jurisdiction. But it does not determine diversity of citizenship. That question concerns the parties' identity, not their dispute.

nondiverse nonparty to its suit to deprive federal courts of the power to hold it to its bargain.

The Richmonds' rule also would trap those seeking to enforce arbitration agreements between a rock and a hard place: If they move early to compel arbitration, beating a state-court filing, the dispute may be unripe. *See, e.g.*, *ADT LLC v. Madison*, No. 3:20-CV-1417, 2020 WL 7046850, at *4 (N.D. Tex. Nov. 30, 2020). But if they wait until after the plaintiff has filed a state-court complaint, that plaintiff may defeat federal jurisdiction by suing a nondiverse nonparty. Allowing that tactic would "fatally undermine the FAA," *Swain*, 867 F.3d at 324 (cleaned up), and cheapen the power of this court.

Section 4 defines "parties" as it does to bar litigants from abusing federal jurisdiction. Having agreed to arbitrate its claims against a diverse defendant, a plaintiff may not escape our power by joining to its state-court suit nondiverse persons whom it could not hale into arbitration. "Parties," in § 4, means the parties to the § 4 suit—not everyone against whom one party claims relief.

## B.

We have diversity jurisdiction here. The amount in controversy far exceeds $75,000. Complete diversity exists as well. The parties to the § 4 petition are ADT and the Richmonds. The Richmonds sued Aviles, too. But only the Richmonds and ADT are alleged to have agreed to arbitrate,[7] and only they are the parties to ADT's suit.

---

[7] There is no showing that Aviles ever agreed, actually or constructively, to arbitrate the Richmonds' claims against him. No one has alleged, for example, that Aviles authorized ADT to bind him to the arbitration agreement. *See* Restatement (Second) of Agency § 140 (1958).

One wrinkle remains.  An indispensable party is one whose joinder is vital to avoid serious prejudice to that person or the parties already joined. *See* Fed. R. Civ. P. 19(b) (listing the relevant factors).  If Aviles is indispensable to the dispute between ADT and the Richmonds, diversity jurisdiction may not be proper.  *See, e.g.*, *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 393–94 (5th Cir. 2006); *see also Rutherford*, 605 F.3d at 491.  On remand, the district court should decide whether Aviles could be indispensable to an arbitral proceeding to which he never agreed.[8]

## C.

The Richmonds protest that *Vaden* instructs us to look to the "substantive controversy as the parties have framed it."  *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 937 (5th Cir. 2012).  By listing Aviles in their state-court complaint, the Richmonds say, they framed that controversy to include him, so there is no diversity jurisdiction here.

We disagree.  The statute says otherwise.  Section 4 doesn't tell us to look to *any* controversy.  It points us only to the controversy "between the parties" to the § 4 suit.  The Richmonds' approach would erase that qualifying phrase.

*Vaden*'s look-through test requires us to define the § 4 "controversy" by looking to the whole dispute "between the parties."  The Richmonds say their framing of who the parties are is part of that controversy.  But that can't

---

[8] *See Brown*, 462 F.3d at 394 ("The threat of piecemeal, inconsistent litigation of claims and issues . . . is insufficiently prejudicial to render a party indispensable under Rule 19 given the oft-stated preference for arbitration under the FAA." (cleaned up)); *see also Rutherford*, 605 F.3d at 491 (observing that "every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party . . . in a federal action to compel arbitration").

No. 21-10023

be right. "Between the parties" *qualifies* the "controversy"; it cannot *be* that controversy.

Wherever possible, we must read statutes to give effect to their every word.[9] If the word "parties" were, as the Richmonds suggest, a mere subset of the "controversy" that § 4 describes, then the FAA's drafters would not have written "between the parties" at all. We won't declare that phrase surplusage; it is neither unclear nor absurd.[10]

There is no injustice in refusing to credit the Richmonds' state-court complaint as the definitive statement of the parties to the dispute. Suppose that we struck the words "between the parties" from § 4. We still would have to look to the *whole* dispute as framed by the parties. And the Richmonds framed that dispute, in no small part, by agreeing to arbitrate with ADT and ADT *only*. When a party agrees to arbitrate a dispute with another, it consents to resolving that dispute separately from others, even if piecemeal litigation results. *See Moses H. Cone*, 460 U.S. at 20. The party may not defeat federal jurisdiction over that dispute by sparking others that arbitration can't resolve.

\* \* \* \* \*

---

[9] *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (cleaned up)).

[10] *See United States v. Dison*, 573 F.3d 204, 207 (5th Cir. 2009) ("When the plain language of a statute is unambiguous and does not lead to an absurd result, our inquiry begins and ends with the plain meaning of that language." (cleaned up)); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001); Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts § 26 (2012) (for the surplusage canon).

Not all is lost for the Richmonds. Perhaps the agreement to arbitrate is invalid, as they argued at the district court. We take no view on that issue. But a federal court can decide it.

Because there's diversity jurisdiction over ADT's suit to compel arbitration, we VACATE the judgment of dismissal and REMAND. The district court shall decide whether Aviles is indispensable to this federal suit. We place no limitations on what matters the district court may address on remand in accord with this opinion.

No. 21-10023

HAYNES, *Circuit Judge*, concurring in the judgment:

I concur in the judgment of this court but would arrive there on a shorter road: the "look through" test of *Vaden* does not apply to diversity jurisdiction cases. *See, e.g., Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 491 (8th Cir. 2010); *Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 324-26 (2d Cir. 2017). Thus, we simply "look at" the parties to the federal litigation where there is, undoubtedly, complete diversity (though I agree with the point about "indispensable parties" being a consideration on remand). Accordingly, I concur in the judgment only.